UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYLENE LEWIS,

                            Plaintiff,

v.                                                    3:16-CV-1267
                                                      (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                OF COUNSEL:

LACHMAN, GORTON LAW FIRM                     PETER GORTON, ESQ.
  Counsel for Plaintiff
P.O. Box 89
1500 East Main St.
Endicott, NY 13761-0089

U.S. SOCIAL SECURITY ADMIN.                  SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

        This matter was referred to me, for all proceedings and entry of a final judgment,

pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in

accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local

Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 17.).

        Currently before the Court, in this Social Security action filed by Raylene Lewis

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 9, 10, 13.)  For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1956.  (T. 75.)  She completed a four year college.  (*Id.*) Generally, Plaintiff's alleged disability consists of carpal tunnel syndrome ("CTS"), a broken ankle, and knee pain.  (T. 218.)  Her alleged disability onset date is March 7, 2013.  (T. 75.)  Her date last insured is December 31, 2016.  (*Id.*)  She previously worked as a building-construction inspector.  (T. 219.)

### B.    Procedural History

On April 11, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act.  (T. 75.)  Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On October 2, 2014 and again on April 9, 2015, Plaintiff appeared before the ALJ, Barry E. Ryan. (T. 33-48, 49-74.)  On June 9, 2015, ALJ Ryan issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 14-32.)  On October 6, 2016 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-5.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 19-27.)  First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since March 7, 2013. (T. 19.) Second, the ALJ found that Plaintiff had the severe impairment of bilateral carpal tunnel syndrome. (*Id*.) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 20.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work except she could occasionally finger with either hand. (T. 21.)[1] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work as a building-construction inspector. (T. 25.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in concluding that she could perform her past relevant work. (Dkt. No. 9 at 12-14 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ improperly found that she could perform medium work. (*Id*. at 14-23.) Third, Plaintiff argues the application of "the Grids" directs a finding of disabled. (*Id*. at 23.) Fourth, Plaintiff argues the ALJ failed to consider her limitations to staying on task and maintaining acceptable levels of attendance. (*Id*. at 23-24.) Fifth, and lastly, Plaintiff argues the ALJ improperly assessed her credibility. (*Id*. at 25-26.)

---

[1]     Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. §§ 404.1567(c), 416.967(c).

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues substantial evidence supported the ALJ's RFC finding.  (Dkt. No. 10 at 7-25 [Def.'s Mem. of Law].)  Second, and lastly, Defendant argues substantial evidence supported the finding that Plaintiff could perform her past relevant work.  (*Id.* at 25-27.)

### C.    Plaintiff's Reply Brief

Plaintiff filed a reply brief in which she addresses Defendant's argument that substantial evidence supported the ALJ's step four determination that Plaintiff could perform her past relevant work.  (Dkt. No. 13 at 1-3 [Pl.'s Reply Mem. of Law].)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### D.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this

sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct.

2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.  The ALJ's RFC Determination

The RFC finding is an assessment as to how Plaintiff's impairments and related

symptoms affect her ability to function in a work setting.  *See* 20 C.F.R. §§

404.1545(a)(1), 404.1569a, 416.945(a)(1), 416.969a[2].  The ALJ is responsible for

assessing Plaintiff's RFC based on a review of relevant medical and non-medical

evidence, including any statement about what Plaintiff can still do, provided by any

medical sources.  *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.1527(d),

416.1545(a)(3), 416.946(c).  Plaintiff has the burden to demonstrate functional

limitations that would preclude any substantial gainful activity.  *Id.* at §§ 404.1512(c),

416.912(c).  The Second Circuit has held that RFC findings "need only afford an

adequate basis for meaningful judicial review, apply the proper legal standards, and be

---

[2]        Effective March 27, 2017, many of the Regulations and SSRs cited herein have been amended. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

supported by substantial evidence such that additional analysis would be unnecessary or superfluous." *McIntyre*, 758 F.3d at 150 (internal citations omitted).

Plaintiff asserts that the ALJ erred in his RFC determination because substantial evidence demonstrated that she could not perform the lifting and carrying requirements of medium work and the ALJ improperly weighed the medical opinion evidence in the record. (Dkt. No. 9 at 14-23 [Pl.'s Mem. of Law].) Plaintiff also argues that the ALJ failed to consider the opinion that she would be "off task." (*Id.* at 23-24.) Of note, Plaintiff does not argue that she cannot perform the other exertional or non-exertional requirements of medium work, such as the sitting, standing and walking requirements.

### i.)    Lifting and Carrying Requirements of Medium Work

To be sure, opinion evidence in the record stated Plaintiff had lifting and carrying limitation that were inconsistent with medium work. Treating source, David Ellison, M.D. opined in 2014 that Plaintiff could occasionally lift and carry up to five pounds and never lift and carry more than five pounds. (T. 435.) Plaintiff further cites to medical treatment notations from John Forrest, M.D. dated August 1995 in which he opined Plaintiff could occasionally carry up to ten pounds. (T. 342.) Of note, Plaintiff continued to work as a construction inspector from 1995, when Dr. Forrest provided lifting limitations, to her alleged onset date in 2013. (T. 219.) Therefore, Dr. Forrest's lifting limitations did not prevent Plaintiff from performing her past relevant work.

However, as stated by Defendant, Plaintiff's framing of her argument is incorrect. (Dkt. No. 10 at 9 [Def.'s Mem. of Law].) Although Plaintiff cited to evidence in the record which supported her contention that she could not meet the lifting and carrying requirements of medium work, Plaintiff fails to show that any reasonable factfinder

would be compelled to weigh the evidence differently from the ALJ.  Under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, substantial evidence in the record supported the ALJ's determination that Plaintiff could perform the lifting and carrying requirements of medium work.  In making his RFC determination the ALJ relied on the medical opinion evidence provided by non-examining medical expert, Steven Goldstein, M.D. and consultative examiner Gilbert Jenouri, M.D.  (T. 24-25.)  Dr. Goldstein opined that based on a review of the medical evidence in the record, Plaintiff could occasionally lift and carry up to 50 pounds and could frequently lift and carry up to 20 pounds, which is consistent with the demands of medium work.  (T. 459.)  Dr. Jenouri opined that based on his examination of Plaintiff she had a "mild restriction to carrying and lifting."  (T. 374.)  Although the term "mild" is somewhat vague, Dr. Jenouri's physical examination supported the conclusion that Plaintiff could perform the lifting and carrying demands of medium work.  Indeed, Dr.

Jenouri noted on examination that Plaintiff had "[g]rip strength 5/5 bilaterally," was able to "zip, button, and tie," and she had full range of motion in her shoulders and elbows. (T. 373.)  Therefore, the ALJ reasonably found that Plaintiff could perform the lifting and carrying requirements of medium work and his determination was supported by the medical opinion evidence of Dr. Goldstein as well as the opinion and examination performed by Dr. Jenouri.

Further, any error they ALJ may have made in determining that Plaintiff could perform the lifting and carrying requirements of medium work was harmless.  At step four the ALJ determined Plaintiff could perform her past relevant work as a building-construction inspector (DOT 182.267-010) as actually and generally performed.  (T. 25-26.)  For the reasons discussed further herein, the ALJ did not err in his step four determination that Plaintiff could perform her past relevant work as actually and generally performed.

First, the occupation of building-construction inspector as generally performed is performed at the light exertional level which requires lifting and carrying no more than twenty pounds and frequently lifting and carrying up to ten pounds.  DOT 182.267-010; see 20 C.F.R. §§ 404.1567(b), 416.967(b).  Second, the occupation as actually performed did not require any lifting and carrying.  As part of her application for benefits, Plaintiff provided a detailed Work History Report.  (T. 235-242.)  Therein, Plaintiff specified that the jobs she performed as a construction inspector required "no lifting or carrying."  (T. 236, 237, 238, 239, 240.)  In addition, Dr. Forrest opined Plaintiff could only lift and carry up to ten pounds; however, Plaintiff performed her past relevant work as a building-construction inspector for almost a decade after Dr. Forrest provided his

opinion. Therefore, although the ALJ determined Plaintiff could perform the lifting and carrying requirements of medium work, any error would be harmless because at step four the ALJ determined Plaintiff could perform her past relevant work as actually performed, which did not require any lifting or carrying. Further, any error would be harmless because Plaintiff worked for years as a building-construction inspector under Dr. Forrest's limitation to lifting and carrying ten pounds.

Overall, although Plaintiff cites to evidence that could support greater lifting and carrying limitations, where substantial evidence supports the ALJ determination such determination must be upheld. Here, the ALJ's determination was supported by medical source opinion and objective examinations. In addition, Plaintiff provided written testimony that her past relevant work did not require lifting and carrying, and Plaintiff successfully worked for years after Dr. Forrest opined Plaintiff could lift and carry up to ten pounds. The ALJ's determination that Plaintiff could perform the lifting and carrying requirements of medium work was supported by substantial evidence in the record and, in the alternative, any error would be harmless.

**ii.)    Weighing of Medical Opinion Evidence in the Record**

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

10

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).  Here, the ALJ properly weighed the medical opinion evidence in the record and substantial evidence supported his weight determinations.

Plaintiff argues the ALJ erred in affording great weight to non-examining medical expert, Dr. Goldstein's opinion and little weight to treating physician, Dr. Ellison's opinion.  (Dkt. No. 9 at 22-23 [Pl.'s Mem. of Law].)  Plaintiff also essentially argues the evidence in the record supported Dr. Ellison's opinion and did not support Dr. Goldstein's opinion.  (*Id.* at 15-22.)

Plaintiff contends that the opinion of non-examining Dr. Goldstein cannot constitute substantial evidence to overcome the opinion of treating source Dr. Ellison. (Dkt. No. 9 at 22 [Pl.'s Mem. of Law].)  However, the Second Circuit has held that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence.  *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016); *see Camille v. Colvin*, 652 F. App'x 25 (2d Cir. 2016) (ALJ was permitted to conclude that consultative examiner's opinion was more reliable than treating source's opinion); *see Heagney-O'Hara v. Comm'r of Soc. Sec.,* 646 F. App'x 123, 126 (2d Cir. 2016); *see Fox v. Colvin*, 589 F. App'x 35, 36 (2d Cir. 2015) ("[the treating source] assessment is contradicted by other substantial record evidence, including the testimony of the plaintiff and the opinions of other medical experts"); *see also Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004); *see also Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002).

Further, it is well settled under the Regulations that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), 416.912(b)(6), 416.913(c), 416.927(e).  Therefore, the ALJ did not commit legal error in affording more weight to the opinion of a non-treating source than a treating source.

Dr. Ellison provided a treating source statement in May of 2014.  (T. 434-435.) He wrote that Plaintiff's diagnosis was carpal tunnel syndrome.  (T. 434.)  He checked the space indicating Plaintiff would be "off task" more than 33% of the day.  (*Id.*)  He checked the boxes indicating that Plaintiff was limited in using her hands and arms to

"less than 1/3 of each working day." (T. 435.) As already discussed herein, he further opined Plaintiff was limited to lifting and carrying no more than five pounds. (*Id.*) The ALJ afforded Dr. Ellison's opinions "little weight" reasoning that the limitations were not supported by the record. (T. 25.) The ALJ specifically relied on Plaintiff's most recent EMG and grip strength tests. (*Id.*)

Dr. Goldstein completed a medical source statement in December of 2014. (T. 459-467.) He opined Plaintiff could frequently lift and carry up to 20 pounds and occasionally lift and carry up to 50 pounds. (T. 459.) He opined Plaintiff could sit for four hours at one time, stand for four hours at one time, and walk for four hours at one time. (T. 460.) He opined Plaintiff could sit for six hours, stand for six hours, and walk for six hours total. (*Id.*) He indicated that Plaintiff could frequently, defined as 1/3 to 2/3 of the workday: reach overhead and in all other directions, handle, feel, push and pull. (T. 461.) He opined Plaintiff could occasionally, defined as up to 1/3 of the workday, finger. (*Id.*) The ALJ afforded Dr. Goldstein's opinion great weight. (T. 24.)

Plaintiff argues that the objective evidence in the record supported Dr. Ellison's opinion and Dr. Goldstein's opinion was inconsistent with such evidence. (Dkt. No. 9 at 15-23 [Pl.'s Mem. of Law].) Plaintiff specifically asserts that the ALJ misread her most recent EMG and grip strength tests. (*Id.*) As stated by Defendant, Plaintiff attempts to recharacterize the objective medical evidence which ultimately falls short of demonstrating that any reasonable factfinder was compelled to weigh the evidence differently. (Dkt. No. 10 at 13 [Def.'s Mem. of Law].)

In weighing Dr. Ellison's opinion the ALJ relied on EMG testing results stating there was no evidence of carpal tunnel syndrome bilaterally. (T. 25.) Plaintiff asserts

this was in error because Dr. Ellison opined in another statement that "[e]ven though EMGs do not show signs of carpal tunnel syndrome, it is possible to have continued symptoms of carpal tunnel syndrome."  (T. 441.)

First, the ALJ did not misread the EMG report.  The August 2014 EMG report indicated, as outlined by the ALJ, no evidence of carpal tunnel syndrome.  (T. 403.) The test results stated "evidence for an overall mild left ulnar neuropathy with conduction slowing at the elbow" and no evidence of ulnar neuropathy on the right side. (*Id.*)  The report indicated "no evidence of a median neuropathy on either side that would suggest a carpal tunnel syndrome." (*Id.*)  The doctor who completed the testing and report further noted:

> left ulnar neuropathy would explain many of [Plaintiff's] symptoms of weakness in the left hand.  It is plausible that she may have a minimal ulnar neuropathy on the right side at the elbow which can at times go undetected on an EMG test.  I, however, do not see any definitive evidence of a carpal tunnel syndrome on either side.  There is no evidence of a cervical radiculopathy with any significant denervation in either upper extremity.

(*Id.*)  There is no indication from the ALJ's decision that he misread or misstated the results of the EMG.

Second, the ALJ did not determine that Plaintiff did not suffer from carpal tunnel syndrome nor that she did not have symptoms related to carpal tunnel syndrome.  Here, the ALJ did not question the diagnosis of carpal tunnel based on testing results.  At step two the ALJ determined Plaintiff suffered from the severe impairment of carpal tunnel syndrome.  (T. 19.)  Although the EMG indicated no objective support of a finding of carpal tunnel syndrome, the reviewing doctor indicated that testing results "would explain" Plaintiff's

symptoms.  (T. 403.)  The ALJ proceeded to evaluate Plaintiff's carpal tunnel

syndrome and symptoms throughout his decision.  The ALJ relied on the

objective testing results in the record in assessing opinion evidence.  The ALJ

ultimately determined that the testing results did not support the limitations

provided by Dr. Ellison.  Therefore, the ALJ did not afford Dr. Ellison's opinion

controlling weight because he properly determined that the limitations were not

"well supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the]

case record."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek,* 802 F.3d

at 375.

        The ALJ also relied on objective grip strength measurements in affording

Dr. Ellison's opinion less than controlling weight.  (T.25.)  For example, Dr.

Jenouri noted Plaintiff had full grip strength on examination.  (T. 373.)  Dr. Ellison

noted on May 27, 2014, Plaintiff's grip strength was 45 pounds on the right and

35 pounds on the left.  (T. 387.)  Plaintiff asks the Court to reweigh the evidence

in his favor, citing to Internet sources interpreting Plaintiff's grip strength testing

results as "on the low end of normal" and "below normal."  (Dkt. No. 9 at 16 [Pl.'s

Mem. of Law].)  Again, under the substantial evidence standard, Plaintiff must

show that no reasonable factfinder could have reached the ALJ's conclusions

based on the evidence in record.  *See Brault,* 683 F.3d at 448; *see also*

*Wojciechowski,* 967 F.Supp.2d at 605 (Commissioner's findings must be

sustained if supported by substantial evidence even if substantial evidence

supported the plaintiff's position); *see also Jones,* 949 F.2d at 59 (reviewing

courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).  As stated by Defendant, "[p]ropositions on what may be theoretically possible cannot help Plaintiff overcome the ALJ's decision under the substantial evidence standard of review."  (Dkt. No. 10 at 15 [Def.'s Mem. of Law].)

Plaintiff also asserts the ALJ "failed to assess and consider" Dr. Ellison's opinion that Plaintiff would be "off task."  (Dkt. No. 9 at 24 [Pl.'s Mem. of Law].) However, the ALJ clearly assessed and considered Dr. Ellison's opinion on this matter.  The ALJ specifically noted that Dr. Ellison opined Plaintiff would be off task for greater than 20%, but less than 33%, of the workday.  (T. 25.)  The ALJ afforded this opinion "little weight" for the same reasons he afforded Dr. Ellison's other limitations "little weight."  (*Id.*); *see Smith v. Berryhill*, 254 F. Supp. 3d 365, 377 (N.D.N.Y. 2017) (ALJ properly evaluated treating source opinion that plaintiff would be off task, despite contrary medical opinion, where substantial evidence supported the ALJ's RFC determination), *appeal docketed*, No. 17-2005 (2d Cir. June 27, 2017).  Therefore, Plaintiff's contention that the ALJ failed to assess and consider Dr. Ellison's opinion that she would be off task is without merit.

Plaintiff further argues the ALJ erred in affording Dr. Goldstein's opinion great weight.  (Dkt. No. 9 at 17-23 [Pl.'s Mem. of Law].)  Plaintiff asserts that the ALJ erred as a matter of law because he provided "no reasoning" to support his determination to afford Dr. Goldstein's opinion weight.  (*Id.* at 17-18.)  To be sure, in his discussion of Dr. Goldstein's opinion the ALJ did not cite specific evidence

in the record in support of his weight determination.  (T. 24.)  However, where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").  Because the ALJ's reasoning for adopting Dr. Goldstein's opinion was readily apparent from his overall decision, the ALJ did not err in failing to explicitly adhere to the Regulations.

Here, the ALJ considered all the evidence in the record, including medical and opinion evidence, as well as Plaintiff's testimony.  (T. 22-25.)  In weighing the medical opinion evidence, including Dr. Goldstein's, the ALJ relied on Plaintiff's testimony that she worked for many years with her impairment, physical examinations in the record including Dr. Jenouri's consultative examination, objective medical evidence such as the EMG and grip strength testing, and Plaintiff's course of treatment.  (T. 24.)  The ALJ also relied on the medical opinions of Dr. Goldstein and Dr. Jenouri.  (T. 25.)  The ALJ's overall discussion of the medical evidence indicated that he found it consistent with Dr. Goldstein's opinion.

Plaintiff also argues that the ALJ erred in adopting a portion of Dr. Goldstein's opinion and rejecting a portion.  (Dkt. No. 9 at 18 [Pl.'s Mem. of Law].)  First, an ALJ does not have to strictly adhere to the entirety of one

medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)
("Although the ALJ's conclusion may not perfectly correspond with any of the
opinions of medical sources cited in his decision, he was entitled to weigh all of
the evidence available to make an RFC finding that was consistent with the
record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL
788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's
discretion to afford weight to a portion of a treating physician's opinion but not to
another portion).  Second, the ALJ appears to have misread Dr. Goldstein's
opinion regarding Plaintiff's ability to reach, handle, feel, push and pull and
perform postural limitations.  However, the ALJ's error was harmless because Dr.
Goldstein's opinion was nonetheless consistent with the overall RFC
determination and the description of Plaintiff's past relevant work.

Dr. Goldstein opined that Plaintiff could "frequently," defined at 1/3 to 2/3
of a workday, reach in all directions, handle, feel, and push/pull.  (T. 461.)  He
also opined Plaintiff could "frequently" perform postural activities.  (T. 462.)
However, the ALJ apparently read Dr. Goldstein's statement as indicating
Plaintiff had frequent"limitations.  The ALJ stated Dr. Goldstein found that Plaintiff
had "numerous other frequent manipulative and postural limitations."  (T. 24.)

A limitation to frequent manipulation and postural activities is not
inconsistent with medium work or Plaintiff's past work as a construction
inspector.  *See generally* SSR 85-15 (outlining the effects of postural and
manipulative limitations on the various levels of work).  According to the DOT, the
occupation of building construction inspector requires occasional postural

limitations; frequent reaching, handling, and fingering; and never feeling.  (DOT 182.267-010.)  Plaintiff indicated that in her past work as a building-construction inspector she performed various manipulative and postural limitations, varying by employer.  She climbed for half an hour to an hour each day; wrote/typed/handled small objects for an hour and a half to two hours; and handled/grabbed/grasped big objects an hour each day.  (T. 236, 237, 238, 239, 240.)  Plaintiff left blank the portion of the report regarding stooping, kneeling, crouching, and crawling.  (*Id.*)  Therefore, Dr. Goldstein's opinion regarding manipulative, reaching, and postural limitations was consistent with medium work and consistent with Plaintiff's past relevant work.  Any error the ALJ may have made in failing to adopt these specific limitations was harmless because it ultimately would not have changed the ALJ's outcome.

Overall, the ALJ properly weighed the medical opinion evidence in the record and his RFC determination was supported by substantial evidence.

**B. The ALJ's Credibility Determination**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence."  *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)).  "When rejecting

subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at §§ 404.1529(a), 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medical determinable impairment could reasonably be expected to cause her alleged symptoms; however, her

statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible.  (T. 22.)  Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence, it was "legally improper" for the ALJ to take into consideration Plaintiff's reasons for leaving her last place of employment, and Plaintiff's treating sources never questioned her credibility.  (Dkt. No. 9 at 25 [Pl.'s Mem. of Law].)[3]

The ALJ's credibility determination was proper and supported by substantial evidence.  In making his determination the ALJ outlined, and relied on, objective medical evidence in the record, Plaintiff's testimony regarding her past work and activities of daily living, and treatment received for her impairment. (T. 24); *see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).  The ALJ properly noted that Plaintiff left her last place of employment because she did not "fit in," and not due to limitations stemming from her carpal tunnel syndrome.  (T. 24.)  It is for the Commissioner, not the court, to resolve potential factual inconsistencies like this, in the context of assessing the claimant's credibility. *See Aponte,* 728 F.2d 588, at 591 (2d Cir. 1984) ("It is the function of the Secretary, not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.") (alteration in original) (quoting *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

In addition, although the treating sources never explicitly questioned Plaintiff's credibility, the Second Circuit has stated that a doctor's primary role is

---

[3]      Plaintiff cites to SSR 16-3p to support her argument that the ALJ's credibility determination was not proper.  (Dkt. No. 9 at 25 [Pl.'s Mem. of Law].)  At the time of Plaintiff's application and the ALJ's decision, SSR 16-3p was not in effect.  SSR 96-7p was in effect at the time and provided guidance in making credibility determinations.

to provide treatment, not assess a plaintiff's credibility.  *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 542 (2d Cir. 2011) ("Bliss underscores that her doctors never questioned the existence or extent of her symptoms, but the lack of such accusations is unsurprising: A doctor's primary endeavor is to provide medical expertise rather than to assess credibility.").  Therefore, a doctor's silence regarding a plaintiff's credibility does not equate to an endorsement of plaintiff's testimony regarding the limiting effects of her symptoms.

Overall, the ALJ properly assessed Plaintiff's credibility.  In support of his determination, the ALJ specifically outlined evidence in the record, including objective imagining and examinations, testimony regarding activities of daily living, and treatment received.

### C.  The ALJ's Step Four Determination

The ALJ determined that Plaintiff was capable of performing her past relevant work as a building-construction inspector because the work did not require the performance of work related activities precluded by her RFC.  (T. 25.) The ALJ noted that the DOT classified building-construction inspector as "light," skilled work, with a specific vocational preparation level of 6.  (T. 26.)  The ALJ noted that according to the DOT, the occupation had "no specific physical demands regarding fingering." (*Id.*)  The ALJ concluded that Plaintiff could perform the work as it actually and generally was performed.  (*Id.*)

Plaintiff argues the ALJ erred in his step four determination because the occupation of building-construction inspector requires frequent fingering, which is inconsistent with the RFC limiting Plaintiff to occasional fingering.  (Dkt. No. 9 at

13 [Pl.'s Mem. of Law].)  Plaintiff does not argue that the occupation of building-construction inspector did not qualify as past relevant work.  Plaintiff, in her reply brief, argues that the assertion that the ALJ found that Plaintiff could perform this occupation as actually performed was "absolutely incorrect or at best, incredibly misleading."  (Dkt. No. 13 at 1 [Pl.'s Reply Mem. of Law].)  However, Plaintiff provides no evidence from the record which would indicate that she could not perform the work as actually performed.

The ALJ's RFC limited Plaintiff to occasional fingering.  (T. 21.)  SSR 85-15 defines fingering as "involves picking, pinching, or otherwise working primarily with the fingers . . .[i]t is needed to perform most unskilled sedentary jobs and to perform certain skilled and semiskilled jobs at all levels of exertion."  SSR 85-15 (S.S.A. 1985), 1985 WL 56857, at *7.  "Occasionally" means occurring from very little up to one-third of the time.  SSR 83-10 (S.S.A. 1983), 1983 WL 31251, at *5.  For the reasons outlined in Part IV.A-B, the ALJ's RFC determination was proper and supported by substantial evidence in the record.

To be sure, the ALJ erred in his determination that the occupation of building-construction inspector had no fingering demands.  Under the DOT, the occupation requires "frequent" fingering.  (DOT 182.267-010.)  Frequent means occurring from one-third to two-thirds of the time.  SSR 85-15, 1985 WL 56857, at *6. Therefore, the ALJ erred in his determination that Plaintiff could perform the occupation as generally performed.  However, any error would be harmless because Plaintiff could perform the occupation as actually performed.  Because the ALJ's finding that Plaintiff could perform this past relevant work as a building-construction inspector as actually performed is

sufficient to negate a finding of disability at step four, any error in determining that Plaintiff could perform this work as generally performed is harmless error.

The determination that Plaintiff could perform the occupation of building-construction inspector as actually performed was supported by substantial evidence in the record.  In making his determination that Plaintiff could perform the occupation as actually performed, the ALJ did not provide a detailed discussion nor did he provide citation to the record to support his determination.  However, a review of the evidence in the record clearly indicated that Plaintiff did not have to perform more than occasional fingering.  Indeed, in her "Work History Report," Plaintiff provided details for five jobs all entailing work as a building-construction inspector.  (T. 235-240.)  Four of the five positions were performed for eight hours a day, five days a week.  (*Id.*)  For those positions, Plaintiff indicated she wrote/typed/handled small objects between one and a half hours to two hours per day.  (*Id.*)  This equates to less than 1/3 of an eight hour workday and is consistent with the ability to "occasionally" finger.  Therefore, Plaintiff testified that the occupation of building-construction inspector, as she actually performed it, did not require more than occasional fingering and was ultimately consistent with the ALJ's RFC determination.

Lastly, Plaintiff argues a finding of disability is warranted under the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids").  (Dkt. No. 9 at 21 [Pl.'s Mem. of Law].)  If, at step four, an ALJ determines a plaintiff cannot perform, or does not have, past relevant work the ALJ then proceeds to step five.   At step five in the sequential evaluation, an ALJ is required to perform a two part process to first assess a plaintiff's job qualifications by considering

her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1520(f), 416.920(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Grids.  *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

Because the ALJ found Plaintiff could perform her past relevant work, he did not proceed to step five.  The ALJ properly determined that Plaintiff could perform her past relevant work at step four; therefore, Plaintiff's argument that she would be found disabled at step five under the Grids is without merit.

Overall, substantial evidence supported the ALJ's determination that Plaintiff could perform the lifting and carrying requirements of medium work.  The ALJ further properly evaluated the medical opinion evidence in the record and properly evaluated Plaintiff's credibility.  The ALJ's RFC determination was supported by substantial evidence in the record.  Although the ALJ erred in his determination that Plaintiff' past relevant work as generally perform did not require fingering, the error was harmless because Plaintiff could perform her past relevant work as actually performed.  Therefore, the ALJ's determination is affirmed.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

**DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated:        January 16, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge